**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICKEY A. FIRTH,

                CIVIL ACTION NO. 2:16-cv-14165

      *Plaintiff*,        DISTRICT JUDGE SEAN F. COX

*v.*                  MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 14, 18)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Firth is not disabled. Accordingly, **IT IS RECOMMENDED** that Firth's Motion for Summary Judgment, (Doc. 14), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Rickey Firth's ("Firth") claim for a period of disability, Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. §

1

1381 *et seq.* (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 18).

On March 6, 2014, Firth filed concurrent applications for DIB and SSI, alleging a disability onset date of August 15, 2013. (Tr. 130-42). The Commissioner denied his claims. (Tr. 50-67). Firth then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on September 2, 2015 before ALJ Anthony Smereka. (Tr. 25-49). The ALJ's written decision, issued September 21, 2015, found Firth not disabled. (Tr. 9-24). On September 26, 2016, the Appeals Council denied review, (Tr. 1-5), and Firth filed for judicial review of that final decision on November 28, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

3

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two. 20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The

4

regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.  ALJ Findings

Following the five-step sequential analysis, the ALJ found Firth not disabled under the Act. (Tr. 9-24). At Step One, the ALJ found that Firth last met the insured status requirements of the Social Security Act on September 30, 2014, and had not engaged in substantial gainful activity in the interval between his alleged onset date of August 15, 2013, and his date last insured. (Tr. 14). At Step Two, the ALJ concluded that the following impairments qualified as severe: obstructive sleep apnea ("OSA"), hypertension, and obesity. (Tr. 14-15). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 15-16). Thereafter, the ALJ found that Firth had the residual functional capacity ("RFC") to perform the full range of medium work. (Tr. 16-19). At Step Four, the ALJ found Firth incapable of performing his past relevant work. (Tr. 19). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Firth can perform. (Tr. 20).

### E.  Administrative Record

#### 1.  Medical Evidence

The Court has reviewed Firth's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 2. Application Reports and Administrative Hearing

### i. Function Report

On March 18, 2014, Firth filled out a Function Report that appears in the administrative record. (Tr. 170-77). He described his condition as his blood pressure "elevat[ing] high [and] low even with medications." (Tr. 170). In a typical day, he would eat breakfast, exercise, clean the house, take a walk, have dinner, watch news, and go to sleep. (Tr. 171). He enjoyed feeding birds, rabbits, and squirrels outside the house. (Tr. 171, 174). His conditions would wake him up three or four times per night. (Tr. 171). In the area of personal care, he noted that self-grooming activities took much longer, and that eating became more difficult since his onset date. (*Id.*). He prepared meals daily without sodium or sugar, and doing so took "[three] times longer than normal." (Tr. 172). House and yard work also took more time than it used to, although he remained capable of completing a number of chores on a daily basis. (*Id.*).

To get around, Firth would walk. He went to stores once a month to shop for clothes and food. He also was able to keep track of finances as he had before his condition. (Tr. 173-74). Once a day, he spoke on the phone with others, and he regularly attended doctors' appointments. (Tr. 174). Prompted to mark abilities with which he encountered difficulty, Firth marked lifting. (Tr. 175). He indicated that he could walk ten minutes before needing a minute's rest, and that he was "very alert" and able to follow both written and spoken instructions well. (*Id.*).

ii.        Firth's Testimony at the Administrative Hearing

Firth opened his testimony by discussing his past work. (Tr. 29). He stopped working in 2009 after working "[t]hirty-something years" as a truck driver. (Tr. 30). His job required him to "unload a whole truck." (*Id.*). He moved on to discuss his treatment relationship with Dr. Deighton, noting he had been treating with him since August 2013 and saw him "every other about a month and a half." (Tr. 33). Dr. Deighton advised mostly on his hypertension. (Tr. 34). "It fluctuates all over the place. It's – my blood pressure's up, it's down. It's all over. And that's what he's treating it for." (*Id.*). His medication was adjusted regularly. (*Id.*). Firth then confirmed that he began with a CPAP in January 2015 and weighed just over 260 pounds. (Tr. 34-35). Two years before, he had weighed 310 pounds. (Tr. 35). "I'm still trying [to lose weight]. I just can't lose anymore." (*Id.*).

Firth's attorney then began to question him. When prompted, Firth described dizziness from his high blood pressure, which occurred every day and forced him to rest. (Tr. 36). He alternated between sitting and moving each day. (Tr. 36-37). He described the pain in his left arm, as well as the manner in which he attempted to control it: "I stretch my fist just to, kind of, tighten back and forth, and back and forth. But it just don't go away." (Tr. 37). The only medication he took, however, was for his blood pressure. (Tr. 37-38). And even with the help of the CPAP machine, he found sleeping fairly tough. (Tr. 38). As a result, he took naps in the afternoon for twenty to thirty minutes. (*Id.*).

Despite his condition, Firth remained able to accomplish a number of chores around the house: "I can push a vacuum for about a minute. And maybe, kind of, wipe down a table. If I do any dishes or whatever, [my brother] has to help me. I have a dishwasher on

7

wheels. He has to help me push it back over after it's loaded. . . . I can attempt to cut the lawn. It takes me a while to get it done. But I have to stop, take a break. I can do something for 10 minutes and then, I have to break." (Tr. 39). If he stood for too long, he would get dizzy and need a break. (Tr. 39). Due to his left arm, "I've lost a lot of strength out of that." (Tr. 40). Though he was left-hand dominant, he now used his right hand for almost everything. (*Id.*).

Following the attorney's line of questioning, the ALJ resumed his own set of questions. In response, Firth noted that he was not cleared by the DMV to drive due to high blood pressure, and he "never returned to any kind of work driving truck[s]." (Tr. 41). "It's been a headache ever since then." (*Id.*). The pain in his left arm at the moment stood at an eight out of ten. (Tr. 42). As a result, he used his right arm for most activities. (Tr. 43-45). He also noted an ability to sit for ten minutes at a time, and to stand or walk for ten to fifteen minutes at a time without experiencing dizziness. (Tr. 43-44).

### iii.     The VE's Testimony at the Administrative Hearing

In his first hypothetical, the ALJ described a person with "an ability for a light level of work. . . . Also assume[] the ability to sit the same amount of time. However, this individual should not work any work around hazards, and that includes work at unprotected heights or around dangerous moving machinery. And no climbing of any ladders, ropes, or scaffolds. No driving in the course of employment. No concentrated exposure to dust, fumes, odors, humidity, or wetness, and no temperature extremes. No reaching above shoulder level with the left upper extremity. No more than occasional balancing, stooping, kneeling, crouching. No crawling. No more than occasional climbing of ramps or stairs.

8

Would there be unskilled jobs that this individual could perform, and if so, could you give us some examples?" (Tr. 46). The VE identified jobs as a "packer"—with 6,000 regional job availabilities and 300,000 national job availabilities—a "sorter"—with 5,000 regional job availabilities and 200,000 national job availabilities—and an "inspector"—with 6,000 regional job availabilities and 200,000 national job availabilities. (Tr. 46-47).

To this hypothetical, the ALJ added "a requirement of a need for a sit/stand option that would allow the worker to perform the work either in a sitting or a standing position, and allowing for change of position every 30 minutes or so, any impact on these jobs?" (Tr. 47). The VE indicated a reduction in the numbers by half, with an allowed absence of once a month. (*Id.*).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the

9

impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved

10

to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

11

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

12

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication .
        . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

At the outset, I note that Firth proceeds *pro se* in this action. For this reason, I grant his motion for summary judgment a liberal construction. *Accord, e.g.*, *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008); *see also Williams v. Comm'r of Soc. Sec.*, No. 14-14101,

2016 WL 6246406, at *7 (E.D. Mich. Mar. 8, 2016), *report and recommendation adopted,* No. 14-14101, 2016 WL 1211745 (E.D. Mich. Mar. 29, 2016), *aff'd sub nom. ALICIA WILLIAMS V. COMM OF SOCIAL SECURITY* (Apr. 11, 2016) (teasing from the plaintiff's narrative brief four arguments). Firth's brief in support of his motion includes little more than bare-bone non-argument, suggesting that the ALJ "has gone against everything Dr. [Deighton] has said and done. He also disagrees with me about pain and []numb[ness] in [my] left side. I disagree strongly with [the] unfavorable answer." (Doc. 14 at ID 350).

Responding to the Commissioner's motion, however, he submitted three further documents, which I construe as supplementing his motion. (Docs. 19-20); *cf. Coleman v. Gullet*, No. CIV.A. 12-10099, 2012 WL 5986779, at *11 (E.D. Mich. Sept. 4, 2012), *report and recommendation adopted,* No. CIV.A. 12-10099, 2012 WL 5986679 (E.D. Mich. Nov. 29, 2012) (construing a *pro se* plaintiff's response to a motion for summary judgment as supplementing his complaint). Before responding to the Commissioner's Motion, he filed additional medical paperwork, which includes an MRI report from September 12, 1997, a portion of an emergency department discharge note dated April 19, 2017, and notes from an April 20, 2017 follow-up with Dr. Deighton. (Doc. 16). His later Response to the Commissioner's Motion contains allegations that he suffers considerable—and heretofore unacknowledged, even by medical practitioners—pain on his left side, and further, that the ALJ raced him into the courtroom and asked questions too quickly for him to comprehend. (Doc. 19 at ID 399-402). The letter he submitted shortly after says that, in fact, Dr. Deighton lied in his medical report, accuses him of negligent care for misdiagnosing him

or misreporting information related to his condition, and states flatly that "he is not credible." (Doc. 20 at ID 406).

To the extent these allegations relate to Dr. Deighton, I cannot discern a legal argument, as his letter appears intended to rescind any argument that his opinion should have been given more weight. And aside from his averments as to the ALJ's questioning— and a brief reference to a test performed by "Dr. James Rae" in which he "lit[] up like a Christmas tree all down [his] left side arm down to [his] left toe and right food and right palm," which does not appear in the record—his Response is a diatribe against his medical care providers for failing to adequately treat him. (Doc. 19 at ID 400-401). I cannot grant form to these formless assertions. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence."); *Rucker v. Comm'r of Soc. Sec.*, No. 13-13908, 2014 WL 4602205, at *7 (E.D. Mich. Sept. 12, 2014) ("Where Plaintiff does not provide argument in support of conclusory claims, the court may deem them waived." (citing *Kruse v. Comm'r of Soc. Sec.*, 2009 WL 902440 at *5 (W.D. Mich. Apr. 2, 2009))); *Tarver v. Comm'r of Soc. Sec.*, No. 1:10 CV 2721, 2011 WL 3900579, at *1 (N.D. Ohio July 8, 2011), *report and recommendation adopted,* No.

1:10CV2721, 2011 WL 3911116 (N.D. Ohio Sept. 6, 2011) ("[A]llegations in *pro se* pleadings are entitled to 'liberal construction' which sometimes requires 'active interpretation . . . to encompass any allegation stating federal relief.' . . . Nevertheless, it is also not the Court's function to search the administrative record for evidence to support Plaintiff's 'argument' and find inconsistencies." (quoting *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985))); *Marion v. Astrue*, No. 3:10-CV-00258, 2010 WL 4955714, at \*4 (N.D. Ohio Nov. 30, 2010) ("While Marion's *pro se* allegations are to be liberally construed, it is not the Court's function to comb through hundreds of pages of medical records to craft an argument that might resemble one Marion attempts to raise." (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))). Two arguments remain: (1) the ALJ denied Firth a full and fair hearing; and (2) the additional medical paperwork submitted warrants a Sentence Six remand. I discuss each in turn.

### 1.      Full and Fair Hearing

Firth suggests that his medication slowed his response time and dimmed his cognition at the hearing, preventing him from active participation, and that the ALJ malignantly took advantage of this disadvantage to confuse him into providing poor testimony. (Doc. 19 at ID 402). He also says that his lawyer at the hearing "never said one word except [']good morning[,] sir[.'] He might [have] moved his head but never said one thing. It's like he lifted the rug while [the ALJ] swept [the] case under the rug." (*Id.*). Generously construed, Firth alleges he was denied a full and fair hearing by the ALJ, and that this was due in part to the ineffectiveness of his counsel. *See Lashley v. Sec'y of Health*

16

& *Human Servs.*, 708 F.2d 1048 (6th Cir. 1983) (setting a higher standard for ALJs to develop the record where a claimant appears without counsel).

Having reviewed the transcript from the hearing, however, Firth's account proves implausible at best. "[W]hen a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures," an ALJ holds a "special, heightened duty to develop the record." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051-52). "Absent such special circumstances . . . the claimant bears the ultimate burden of proving disability." *Id.* The law does not view the presence of ineffective counsel as equal in any respect to the absence of counsel. *See, e.g.*, *Smith v. Colvin*, No. 1:12CV2042, 2013 WL 2551951, at *19 (N.D. Ohio June 7, 2013) ("While an ALJ has a special duty to develop a full and fair record where a claimant is proceeding without counsel . . . the same cannot be said of a claimant who appears with counsel." (internal citation omitted)); *Meadows v. Astrue*, No. 1:11-CV-02378, 2012 WL 5205798, at *4 (N.D. Ohio Sept. 25, 2012), *report and recommendation adopted sub nom. Meadows v. Comm'r of Soc. Sec.*, No. 1:11 CV 2378, 2012 WL 5199627 (N.D. Ohio Oct. 22, 2012) ("[F]ederal courts have rejected arguments by other social security claimants who allege ineffectiveness or malpractice by their counsel in the representation of a claimant."). Even if it did, Firth's lawyer questioned him thoroughly as to his blood pressure, (Tr. 36), left arm pain, (Tr. 37), medication and dizziness, (Tr. 36-37), daily habits and sleeping patterns, (Tr. 37-38), chores, (Tr. 39-40), and physical abilities, (Tr. 40-41). The ALJ similarly questioned Firth about his past work history, left arm pain, obesity, physical abilities, and activities of daily living. (Tr. 33-35, 41-45).

17

Unlike the claimant in *Lashley*—who testified *pro se*, had suffered multiple strokes, and was plainly discombobulated at the hearing—Firth was represented at the hearing and at no point appeared confused, addled, or otherwise nonresponsive to questioning. (Tr. 29-32, 33-45). The ALJ evidently informed Firth of the manner in which the hearing would proceed and provided multiple opportunities for Firth or his attorney to interject and comment. (Tr. 28-29, 31, 43, 45). At several points, Firth even interrupted the ALJ's question in anticipation of the answer sought. (Tr. 35, 44).

These are not the telltale signs of procedure gone awry. Quite the opposite, for the transcript undoes Firth's argument. As such, the Court should not find this argument persuasive.

### 2.      Sentence Six

In submitting an MRI report from September 12, 1997, a portion of an emergency department discharge note dated April 19, 2017, and notes from an April 20, 2017 follow-up with Dr. Deighton, Firth implies that he seeks a remand under Sentence Six of 42 U.S.C. § 405(g). (Doc. 16).

Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon*, 447 F.3d at 483 (quoting 42 U.S.C. § 405(g)). Evidence is new only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is material only if "there is 'a reasonable probability that the Secretary

would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Firth cannot show that the MRI report from 1997 is new, and has not made any argument that it was unavailable to him prior to the hearing. In addition, he was represented at the time of the hearing, and may not now capitalize on his counsel's past failure to supplement the record. *See Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) ("[T]here is absolutely no statutory or decisional authority for [Plaintiff's] unstated, but unmistakable, premise that the alleged incompetence of [her] first attorney constitutes 'good cause' in this context. In addition, all of the proposed 'new' evidence was in existence at the time of the hearing, but it was not produced for whatever reason."); *see also Hairston v. Comm'r of Soc. Sec.*, No. 14-13218, 2015 WL 4633935, at *5 (E.D. Mich. Aug. 3, 2015) ("[T]his court has consistently declined to find that attorney incompetence, neglect, or error in failing to timely obtain and submit medical evidence constitutes 'good cause' for purposes of a sentence six remand."); *Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009) ("Mistakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six.").

Nor can Firth show that the discharge report excerpt or follow-up notes from Dr. Deighton are material to the period at issue. At its most probative, Dr. Deighton's notes offer a potential diagnosis of cervical radiculopathy due to degenerative joint disease of the spine, as well as lumbar spinal stenosis. (Doc. 16 at ID 363). The notes were drafted nearly two years after the hearing at issue, and they provide no additional analysis of these conditions' severity, their genesis, the method by which they were discovered, or their relation to Firth's functional capacity. As such, there is no reasonable probability that this evidence would change the outcome of Firth's claims on remand. *See Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted sub nom. Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210616 (E.D. Mich. Sept. 20, 2012) ("While plaintiff provides evidence of a neck impairment, she does not explain how this reduces her functional limitations and how this impairment would have caused the ALJ to find that she was disabled. . . . [T]he mere existence of a condition does not equate to disability."); *Ray v. Comm'r of Soc. Sec.*, No. 1:11-CV-211, 2012 WL 2507007, at *7 (E.D. Tenn. June 5, 2012), *report and recommendation adopted,* No. 1:11-CV-211, 2012 WL 2504014 (E.D. Tenn. June 28, 2012) ("The potential diagnosis of osteomyelitis, without more, is not likely to have changed the ALJ's decision.").

For these reasons, Firth's Sentence Six argument remains unconvincing and the Court should find it so.

### H.    Conclusion

Having reviewed the record, I find that substantial evidence supports the ALJ's decision in addition to having reviewed Plaintiff's arguments. For this reason and the reasons stated above, the Court **RECOMMENDS** that Firth's Motion for Summary Judgment, (Doc. 14), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which

it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 27, 2017                                    S/ PATRICIA T. MORRIS
                                                                    Patricia T. Morris
                                                                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Rickey A. Firth at 6236 N. Newburgh Rd., Westland, MI 48185.

Date: July 27, 2017                                    By s/Kristen Castaneda
                                                                    Case Manager

22